We will hear from Mr. Kramer in the case of Nowlin against Governor Jay Pritzker. May it please the court, good morning counsel. My name is John Kramer with my partner Joe Urani. We are here on behalf of the appellants. We would respectfully request that this court reverse the decision of the federal district court dismissing the claims of the appellants in this matter. The three issues I would like to address in the short time I have with you are three. Why the appellants' claims are not moot, why the appellants' viewpoint discrimination prevails, and why the appellants have standing. Now, Mr. Kramer, you had mentioned those three points before. Speaking personally, I would benefit if you would start with the standing argument. I can do that, Your Honor. Thank you. Okay. With regards to the standing issue, Judge, the plaintiffs, we contend, the appellants, have set forth concrete and particularized injuries under the governor's orders both at the time of and after the appellants filed their lawsuit. The U.S. Supreme Court decision in the Roman Catholic Diocese decision stated that the loss of First Amendment freedoms for even a minimal amount of time unquestionably constitutes an irreparable injury. But I'm looking at what you said. You know, in the abstract, that's a perfectly uncontroversial statement, but I can't figure out from the complaint, the amended complaint in particular, what effort to exercise a First Amendment right was made by any of these individual people, what happened, why they felt they couldn't exercise that right. Where is the detail? Keeping Spokio in mind. Yes. Well, Judge, I think that with the amended complaint, I would direct the court's attention to several different paragraphs where I think that injuries were alleged. First, with regards to paragraphs 13 through 24 of the complaint, the fear of future restrictions on religion. Also, on page 14 of our complaint with the footnote, we were reserving our rights to continue with our claims that the court had dismissed in the first original complaint. What kind of restrictions on religion are you asserting? I'm sorry, Your Honor? Does the complaint specify what these, well, both the imminence of and also what particular restrictions on religion are you talking about? Well, Judge, there's a few. First off, with regards to the executive order that we're, well, there are several executive orders. There are quite a few executive orders. Yes. I know that. And so, with regards to executive order 38, so that's the one where the governor takes the position in the case that things had changed, that the governor was no longer restricting religious activities. Right. And that one, and he has said, and all that have followed it, including his statement, he recommends, but it's just a recommendation, if a religious organization wants to follow it, they will, and if they don't want to follow it, they won't. Right. Well, specifically, the appellants in our case were restricted. I would argue, Judge, and as I think we did set forth in our complaint, under section 2D of executive order 38, that would have limited wakes, funerals, baptisms, confirmations, weddings. Do we know that? Was there ever a wake or a funeral that had to be canceled? Well, Judge, we know that wakes were limited to 10 people, and I think that when— Was there a religious event at a church? Well, Judge, I mean, religious activities are not restricted to the four walls of a church. You can have a Bible study. You can have, I mean, most weddings, I mean, ceremonies obviously can happen inside a church, but they can happen in a number of places. We could have baptisms, confirmations that don't occur— What I mean, though, is, was there a religious event, no matter whether it was in the middle of a field or inside a church building or in an auditorium, have they pointed to a particular religious event that they were hoping to schedule that did not take place? Well, Your Honor, yes. We believe that that was alleged in the complaint as far as being able—like our injunctive relief in paragraph 130 of our complaint. We allege that their actions, the actions of the governor, continued to have their religious activities restricted. And so those religious activities aren't just going to church on a Sunday morning or Wednesday night. No, I understand what you're saying, but you're telling me, though, that no particular person is pointing to any particular event that was either restricted in attendance or that had to be canceled or postponed or in any way was affected. Well, Judge, no. I would say that all of those events for the appellants—I mean, beyond the appellants—but for the appellants, all of those different activities were restricted by the governor's actions. And I would say, Judge, that when you read that Executive Order 38, the exemption for the religious services that this court and other decisions have cited to, it says in that language that pursuant to IDPH guidelines, churches should limit gatherings to 10 people for indoor services. But the order clarifies that only insofar as this is consistent with free—it mentions free exercise. And by using the word should and not the word shall or must or one of these other more compelling words, you're not saying that the governor is precluded from giving advice to organizations within the state? Well, Judge, I'm not saying that for sure, but where was that language— So you're thinking maybe he can't give them advice? No, he can give advice, Judge, but where was that language for the non-religious activities? He felt compelled to tell people that were—including the appellants—that, well, if you're going to go to church on a Sunday, you better follow the IDPH guidelines that limit it to 10 people. There wasn't that restriction placed on going to Home Depot or Juul or any of the other places that were allowed at that time, despite the home shelter rule. But are you complaining about should or must? Because the number 38 order is advice. Well, Your Honor, I am here to argue on behalf of the appellants not only with regards to 38, but everyone thereafter, because they continue to live in the fear that the shelter-in-place restrictions and, moreover, Executive Order 43, 73, even Executive Order 25 in September of this year, the governor is restricting the activities and giving warnings that—the governor in September 21st of 2021 said dire warnings about the Delta variant, saying the same is more aggressive. There was a disaster proclamation made by the governor on 11-12— Why are your clients any more hurt by a disaster proclamation than anybody else in the state of Illinois? Where is the particularized injury that Spokio says we have to look for? Well, the particularized injury, Judge, is in our amended complaint, and I can go through those, but they're paragraphs 13 through 24, paragraphs 60 and 61, 65 through 67. Is this the violations of the defendant personally and individually affected? She's lived in fear for her safety from reprisals and prosecution and fear that her inalienable rights have been removed with no end in sight? That's what I took out of the complaint. And, Judge, we also cited in paragraphs 74 and 75 through 76 about the plaintiff's businesses. We have listed four separate plaintiffs, female business owners, that were restricted with regards to opening up and carrying on with their business. We also have the language in 75, paragraph 75, that alleges that the restrictions and And in paragraph 126A, further alleges the loss of business income. Judge, we... Is your argument compatible with... I mean, yes, there are these vague allegations. We don't know exactly, but I'm wondering if it's compatible with the Supreme Court's Jacobson case. I think it is compatible with the Jacobson case, Your Honor, but what I think is more compelling is the decision that we recently had with the Archdiocese case. But that was about mootness more than it was about injury and fact and causation and redressability. It was, Your Honor. But in this case, Judge, what we're alleging is that the plaintiffs had been discriminated against and had their constitutional rights violated, not only by the executive order that was in 38, but everyone thereafter, because they weren't allowed to go to those other religious activities outside of the church building. Those were still limited to 10 people, whereas... It doesn't say that in the executive order. It's your interpretation of it, I believe. Well, Judge, if you look at the executive orders and the whereas language, I don't know how you could come to a reasonable conclusion otherwise. And I'm past my five-minute mark, Judge, and I want to... If you would like to save your time, unless there... Is that okay? Sure, of course. I don't want to... I know things got delayed today, and I don't want to... No, no, no. Don't worry. That's how much time you'll have for rebuttal. Thank you, Judge. Mr. Hemmer. Good morning. May it please the Court, Alex Hemmer for the Governor. The Court should affirm the District Court's decision dismissing the complaint. Plaintiffs were given two opportunities to explain exactly how they were injured by the Governor's early pandemic executive orders and could not do so. As the District Court held, they failed to plead Article III standing. Plaintiff's claims also fail for other reasons. Their damages claims are barred by sovereign immunity, and at least their free exercise clause claims are moot because those claims target a restriction that expired 18 months ago and that the Governor has formally stated will not be reimposed. Finally... That's your best distinction from the Roman Catholic Diocese case? I think the Roman Catholic Diocese case is distinguishable on a number of grounds. I mean, you know, at the outset, the order there was actually still in place. The Governor, the plaintiff's conditions in the counties that the plaintiffs lived in there had kind of moved, had caused them to move into a different zone, I think from... The color coding shifted around. ...orange to yellow or something like that. But there was no... I mean, the order was still in place, and there was certainly no statement that it wasn't going to be reimposed again. So I'm happy to turn to standing first, since that was the kind of topic that preoccupied your discussion with my colleague. I mean, as the court explored with him, plaintiff's primary injury allegations, which are at paragraphs 13 to 24, are these kind of conclusory, vague statements that each plaintiff has, quote, lived in fear from her safety from reprisals and prosecution and fears, I think, that her inalienable rights have been removed with no end in sight. That's not sufficient, as the district court held. It's neither concrete nor particularized. What about the... Your opponent mentioned that there were some paragraphs alleging injuries to businesses. That's right. I mean, I think these are paragraphs in the 70s, 74 to 76, 124.  The business plaintiffs were generally restricted in their ability to open for business and lost income. So our first position is, what the district court held, which is that these injury allegations, like the rest, are simply too thin. Plaintiffs don't identify what kind of businesses they are. They don't identify how specifically they were affected, if at all, by any of the governor's orders. I mean, not all businesses suffered as a result of the pandemic. If plaintiffs were in the grocery delivery business, for instance, that would be a different story than if they were symphonies. They don't allege what kind of restrictions were imposed on them, and of what kind, and so on. And so plaintiffs' failure to plead these basic details failed to put the state and the court on notice about what their claims actually are. In addition, we still think that judgment should be affirmed on standing grounds, even if you were to kind of credit the particularity of those allegations, because plaintiffs haven't pled redressability. I mean, plaintiffs' damages claims, as I'm happy to discuss, are barred here by sovereign immunity. And all plaintiffs really allege in those paragraphs is completed injuries. They say that they lost income. They say that they were subject to these capacity restrictions. They don't say how they might be impacted going forward. If they were, they can't really obtain injunctive relief here, because the Supreme Court has explained that a plaintiff can't get injunctive relief in a takings case, where a state has a mechanism to obtain compensation. So there are multiple kind of independent bases on which to affirm the district court's rejection of standing, even as to these sort of takings, business-related claims. So I'm happy to turn back to continue with standing if the court has questions. I think that our bottom line position is that even if you were to kind of credit some of the things that plaintiffs are saying here and in their appellate briefs, things that largely are not in the complaint, most of those allegations don't really resolve the standing issue that the district court identified, insofar as none alleges an injury that's concrete, particularized, plausible, and forward-looking. So what about one of the things Mr. Kramer relied on repeatedly was what he sees as restrictions on religiously-based wakes and funerals? Right. So as the court explored with him, I mean, I think there are several issues with this argument. For one, it's not in the complaint. This is an issue that's sort of been developed for the first time on appeal. For another, it's really difficult to identify the restrictions that he's describing in the executive orders. He's relying on a kind of interpretation of the executive orders that I've never seen made that certainly isn't developed in the complaint and that isn't borne out by any enforcement actions ever taken by the state or anyone else. Has there been litigation that's actually come to the end of even a trial-level proceeding related to either a wake or a funeral? Not that I'm aware of, Your Honor. And he doesn't, notwithstanding his discussion of the kind of whereas clauses, if you look at the text of the exemption, I just don't see it. I mean, it says this executive order does not limit the free exercise of religion. It doesn't say it doesn't limit the free exercise of religion only in a church or anything like that. I just don't see any basis to not read that exemption to apply to any kind of practice of religion. And certainly, it's not. No contrary argument is developed in the complaint. So I don't think there's anything to do with a kind of wake funeral argument. So what about on mootness? Of course, there is the Roman Catholic archdiocese case. And there is a voluntary cessation doctrine in mootness law. What's to prevent Governor Pritzker? Maybe Omicron will turn out to make him think that he's got to go back to a much more restrictive regime. Well, I think the court can look to the commitment that the governor made in the January executive order. You know, he said in that order that he doesn't intend to impose any further restrictions on the free exercise of religion. And he's now, his behavior over the last nine months has certainly borne that commitment out. It's true that there's the Omicron variant. Before the Omicron variant, there was the Delta variant. And he's taken steps in August and September of this year to kind of impose reasonable public health measures to ensure that the Delta variant doesn't spread more than it needs to. And none of those have included a restriction on the free exercise of religion. I mean, the court has a lot of data at this point to look to and to credit that commitment made in January. What about other theories? I mean, this repeating paragraph mentions the first, fifth, and 14th amendments. So maybe the 14th is just in there to make it applicable to the states. I don't know, although there are hints of an equal protection argument somewhere. The Fifth Amendment must be, I guess, taking. I'm not sure. I think that's right. I mean, you know, I think the issue you're identifying, Your Honor, is the kind of haziness of the complaint as a general matter. I think you're right that the Fifth Amendment is probably in there for the takings claim. That haziness is why the district court, I think, you know, rejected plaintiff's claims at the threshold on standing. Plaintiff's failure to explain exactly how any of them have been impacted by any specific provision of any specific executive order makes it essentially impossible to adjudicate any of their claims on the merits. And, you know, you see that even at oral argument today. I mean, plaintiffs seem to want to challenge not only the executive orders that were in force at the time that they filed the complaint, but every subsequent executive order. And they can only do that by kind of keeping the case pitched at this extraordinarily high level of abstraction. But they're not allowed to do that. Spokeo says it. Lujan says it. District court said it. And I think that's the kind of simplest path to affirming in this case is that plaintiffs have just failed to meet their obligation to plead Article III standing. So was the district court too precipitous when it said, you know, one amended complaint is enough. We're not going to go and have a second amended complaint? Not under the facts of this case, Your Honor. I mean, this court's been very clear that courts, that district courts should give plaintiffs at least two opportunities. But here the district court did that. And I think that its decision not to give plaintiffs a third opportunity was justified by, you know, their failure to kind of plead facts in the first amended complaint that addressed the issues that the district court had identified with the original complaint. The district court dismissed the original complaint on substantially the same grounds, that plaintiffs had failed to identify, you know, a detailed, a concrete, a particularized injury. And plaintiffs came back and essentially added only the language that you and my colleague were discussing around, you know, fearing for her safety from appraisals and prosecution. I think under those circumstances, the district court was not obligated, certainly acted within its discretion in not giving them a third opportunity. In any event, as the district court explained, plaintiffs' claims fail on the merits. And so there was simply no, you know, any amendment as to standing would have been futile for that reason. And the district court goes through each of those claims in detail and explains why the plaintiffs' allegations don't plead takings claims, don't plead equal protection claims, et cetera. So, you know, I think the district court acted well within its discretion here. Mr. Hammer, if we find that, affirm the district court on the standing grounds, then would that dismissal then be without prejudice and the plaintiffs could refile whatever they wanted? That's exactly right, Judge Kirsch. If the court were to affirm on standing grounds, the dismissal would be without prejudice for lack of jurisdiction. And if plaintiffs wanted to file another lawsuit today challenging any aspect of the current executive orders, the mask mandate, anything else, then they were, they're completely at liberty to do that. And by the same token, presumably could go to the state courts. Of course, if they wanted to plead a takings claim, you know, the state courts are open for that. If the court has no further questions, I'm happy to rest. We'd ask that the court affirm. All right. Thank you very much. Mr. Kramer. Thank you, Your Honor. A few points that I'd like to address, Your Honor, that were raised by my opposing counsel. With regards to the language that the governor used, he did use the words, I intend. Counsel also had pointed out, well, there was no subsequent order limiting the restrictions on funerals and wakes and other religious services. And I don't think that that is the case. In fact, I think if you look at executive order 73 issued in November of 2020 under section 3E, we see special language was included limiting attendance at funerals and visitations. With regards to the standing issue, we have, again, allegations alleged in the complaint, including injunctive relief, setting forth that our attendance- Do you concede that damages are unavailable? I'm sorry? Do you concede that damages against the state, against the governor in his official capacity as governor of the state of Illinois are unavailable? Well, I concede that compensatory damages, other than if you were not to include attorney's fees and costs in that category, would be restricted and not available. But the 11th Amendment prohibits damages, period, against states. Well, I think we're allowed, Your Honor, under the decisions that we've had with the injunctive relief that we're pursuing in the claim to ask for nominal damages. I don't think so. The cases that you cited were all against municipalities, park districts, prisons, other institutions that do not partake of the state's 11th Amendment immunity. Right. Well, Your Honor- I didn't see a single case against the state of Nebraska, the state of Illinois, the state of anything. Well, Your Honor, I think what we're entitled to do is to file the complaint and to seek the injunctive relief that we did seek in the complaint. Well, on the injunctive relief side, the analysis, I would agree, is somewhat different, but we'll see if it's dispositively different. But I don't see how you can get damages, even nominal. Judge, with regards to the viewpoint discrimination, I didn't get a chance to address that, and I'd like to do that now. Sure, go ahead. From the allegations in the complaint, as well as the exhibits that were attached, we feel strongly that the governor engaged in blatant discrimination and violated the Constitution, where he was protecting and marching with political allies. But meanwhile, the plaintiffs, again, were restricted. The appellants, they couldn't go out. They couldn't go to the wakes or funerals. They couldn't go open their own businesses. And at the same time, we had the governor violating his own stay-at-home order and were not enforcing against the protesters who gathered to speak on their principles and beliefs, and prohibited the appellants to gather in groups of above 10. And that's significant. I mean, you can have a family judge that has 10 kids or grandchildren, and you couldn't even attend your grandfather or grandmother's funeral. You couldn't possibly even your parent if you had a larger family. So the other thing I wanted to address with regards to withstanding is, Judge, in this case, we feel that we have alleged enough facts. We don't have, at the pleading stage, have to prove our case. We have to set forth a claim. And we have to set forth a claim that would give them knowledge. The facts that support those claims can be developed in the case. And I think that we have met the minimum standard with regards to pleading that we have a viable claim. There was no one's, the governor is not disputing anything with regards to the executive orders. And he's not disputing that there were restrictions placed on the appellants in the case. He's just, they're just saying, well, you know, they didn't plead enough facts to say that, you know, one of the plaintiffs on such and such a date was prohibited from going to a funeral. And I don't think that the standards require that at this point in time. But we should have been given an opportunity to replete under Rule 15. We should have been given that chance because the first time generic came up was in the second order. Thank you very much. Thank you very much. Thanks to both counsel. The court will take the case under advisement. Thank you.